IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

IVYANNE ELBOROUGH, by her next friend
DEBORAH ST. AUBIN-ELBOROUGH,                          OPINION and ORDER

                Plaintiff,

DEAN HEALTH PLAN, INC.,

                Involuntary Plaintiff,

                                    08-cv-447-bbc

      v.

EVANSVILLE COMMUNITY SCHOOL DISTRICT
and RON GROVESTEEN,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Ivyanne Elborough joined the Evansville High School freshman football team in the beginning of August 2007 as the only female team member.  She alleges that for the next few weeks, defendants Evansville Community School District and Ron Grovesteen (the head football coach) discriminated against her on the basis of sex by failing to keep the girls' locker room unlocked, keeping snacks and the practice schedule in the boys' locker room where she was not allowed and telling her she needed to get her hair cut "like a boy."

On August 30, after plaintiff's mother had complained about these matters to

1

defendant Grovesteen and two school administrators, plaintiff came to practice without protective equipment because she had been unable to find anyone to unlock the girls' locker room.  What happened next is the primary impetus for this law suit:  plaintiff participated in a number of practice drills without any pads and defendant Grovesteen did not stop her from doing so.  Plaintiff hurt her shoulder during one practice drill and then fractured her clavicle during another.

Plaintiff brings claims against the district under Title IX of the Education Amendments of 1972, the due process clause and state law and against defendant Grovesteen under the equal protection clause, the due process clause and state law.  Two motions are before the court: (1) defendants' motion for summary judgment; and (2) plaintiff's motion to disregard new evidence submitted with defendants' reply submissions.

Plaintiff's motion will be granted.  In accordance with circuit law and this court's summary judgment procedures, I have not considered any evidence or argument submitted for the first time with the reply brief or any facts included in a brief but not in the proposed findings of fact.  Nelson v. La Crosse County Dist. Attorney, 301 F.3d 820, 836 (7th Cir. 2002) (arguments raised for the first time in the reply brief are waived); Procedure to Be Followed on Motions for Summary Judgment I.B.4 ("The court will not consider facts contained only in a brief.").

Defendants' motion for summary judgment will be denied with respect to plaintiff's

claims under the equal protection clause and state law. A reasonable jury could find that defendant Grovesteen allowed plaintiff to play without protective equipment because of her sex (for the purpose of her equal protection claim) and that he disregarded a "known danger" (for the purpose of her state law claim). Plaintiff's other claims must be dismissed. With respect to her Title IX claim, plaintiff has failed to show that the district had adequate notice of the alleged discriminatory acts against her. With respect to her due process claim, she has failed to show that defendants *created* the dangerous situation; their alleged violation was a failure to stop plaintiff from harming herself, which is not enough to establish a claim under the due process clause.

From the parties' proposed findings of fact and the record, I find the following facts to be undisputed.

## UNDISPUTED FACTS

Beginning on the first Monday in August 2007, plaintiff Ivyanne Elborough was a member of the Evansville High School freshman football team. Defendant Ron Grovesteen was the head football coach.

Safety equipment for practices is stored in the locker rooms. Plaintiff's equipment was stored in the girls' locker room; she was not allowed in the boys' locker room. Sometimes, plaintiff was unable to get into her locker room because it was locked to prevent

3

theft.  To get in, plaintiff had to find someone with a key to open the door, which made her late for practice.  Defendant Grovesteen required latecomers to do push-ups.

Pretzels were available in the boys' locker room as snacks but plaintiff was not allowed there.  A practice schedule was posted in the boys' locker room but not in the girls' locker room.  Practices started at the same time every day.

On August 27, plaintiff's mother, Deborah St. Aubin-Elborough, complained to defendant Grovesteen and Andrew Lehman (the junior varsity football coach) about plaintiff's inability to get into the girls' locker room.  Grovesteen said he did not have a key to the locker room.  When St. Aubin-Elborough asked Grovesteen whether he could get a key, he repeated that he did not have one.  When she asked him, "Don't they trust you with a key to the girls' locker room?" he said "Nope, not to the girls' locker room." (Defendants say that they dispute the "details" of St. Aubin-Elborough's conversation with Grovesteen, but I have treated plaintiff's proposed facts on this issue as undisputed because defendants failed to set forth their version of the facts.  Procedure II.D.2 ("If you dispute a proposed fact, state your version of the fact and refer to evidence that supports  that version.").

Contrary to Grovesteen's statement, he did have a key that opened the girls' locker room at this time.  (The parties dispute whether Grovesteen knew that his "universal" key opened the girls' locker room.)  Lehman agreed to help insure that the locker room would be open for plaintiff.

A day or two later, St. Aubin-Elborough spoke with Brian Cashore, the athletic director and associate principal. She repeated her concern that plaintiff could not get into the locker room. In addition, she complained that defendant Grovesteen had told plaintiff that she had to get her hair cut like a boy and that plaintiff did not receive the snacks that the male players received. Cashore told St. Aubin-Elborough that he would try to make sure the locker room was open for plaintiff.

On August 30, St. Aubin-Elborough spoke to Heidi Carvin, the district administrator, about the same concerns. St. Austin-Elborough said that even after plaintiff had gotten her hair cut as instructed by defendant Grovesteen, he singled plaintiff out, telling her that she needed to get her hair cut like a boy. In addition, St. Aubin-Elborough said that she was concerned about plaintiff's not having access to the girls' locker room and her equipment. Carvin told plaintiff that she would talk to the athletic director about these concerns. Carvin did this, but she does not remember whether it was on the same day. She believed that defendant Grovesteen had more important things to do than locking and unlocking doors.

On August 30, plaintiff found the door to the girls' locker room locked again when she tried to get in before football practice. This time, however, she could not find anyone to unlock the door and she was unable to put on her protective equipment for practice. (Plaintiff proposes as a fact that there were other days that she was unable to find someone to unlock the door, but the testimony she cites does not support the proposed fact.)

5

Normally, when a player appeared at practice without equipment, the response from staff was to find equipment for the player to wear.  Defendant Grovesteen knows that proper equipment is needed to help reduce the risk of serious injury when playing football.

Defendant Grovesteen offered plaintiff and the other freshman players a choice between participating in drills with the junior varsity and varsity players or just watching. Plaintiff participated in the drills.  Plaintiff hurt her right shoulder when she was conducting a drill involving a somersault. She continued on to the next drill, which was a form-blocking drill.  She fractured her right clavicle during practice.

## DISPUTED FACTS

The parties dispute whether:

- a practice schedule was posted in a hallway that was accessible to both sexes;

- defendant Grovesteen told plaintiff when no one else was present that "getting her hair cut to look like a boy was a commitment she was going to have to make to be on the football team";

- plaintiff received a "permanent team jersey" like the boys on the team did;

- the athletic director spoke to defendant Grovesteen and Lehman about making sure the door to the girls' locker room was unlocked;

- plaintiff was the only player participating in the drills on August 30, 2007 who

6

was not wearing pads;

•       whether there were other instances in which plaintiff showed up for practice
        without pads.

OPINION

A.   Title IX: Defendant Evansville School District

Under Title IX, "no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although the primary enforcement mechanism of the statute is the withdrawal of federal funds, the Supreme Court has inferred a private right of action against educational institutions such as school districts when the district has a discriminatory practice or policy, Cannon v. University of Chicago, 441 U.S. 677 (1979), or the district has "actual notice" of and is "deliberately indifferent" to discrimination on the basis of sex by its employees. Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998).  Individuals may not be sued.  Smith v. Metropolitan School District, Perry Township, 128 F.3d 1014, 1019 (7th Cir. 1997).  The parties agree that the district receives federal financial assistance and that the football team is an "education program or activity" within the meaning of the statute.

7

The question is whether the district "subject[ed] [plaintiff] to discrimination" on "the basis of sex" in the context of her participation on the football team.  Plaintiff does not point to a discriminatory policy or practice of the district, so she must show that the district had notice of discriminatory treatment by its employees and failed to take reasonable measures to stop further discrimination from occurring.  The parties seem to agree that any notice given to the athletic director and district administrators may be attributed to the district because these two employees had "authority to take corrective action."  Fitzgerald v Barnstable School Committee, 129 S Ct. 788, 797 (2009).  The parties do not raise the question whether defendant Grovesteen had authority to take action as well, presumably because the Supreme Court has held that "knowledge of the wrongdoer himself is not pertinent to the analysis" for determining liability under Title IX.  Gebser, 524 U.S. at 291.

Plaintiff identifies five allegedly discriminatory actions in this case:

- putting pretzels in the boys locker room, where plaintiff was not allowed to go;

- keeping the practice schedule in the boys' locker room;

- telling plaintiff she needed to get her hair cut "like a boy";

- failing to unlock the girls' locker room, where plaintiff's protective equipment was stored;

- allowing plaintiff to participate in practice drills without shoulder pads.

The most serious of the five incidents is the last, but the district did not have notice

8

of that problem.  Plaintiff adduces no evidence that she had played football without shoulder pads at any other practice before August 30.  (It is disputed whether plaintiff was *present* at practice without shoulder pads, but she does not say that she actually played without them before.)  More important, the district had no information suggesting that she had been playing (or was even at practice) without necessary equipment.  Plaintiff's mother complained to administrators that plaintiff had difficulty getting into the locker room, not that she was unable to use safety equipment for practice.

To hold the district liable for the injury on August 30, one would have to assume that the administrators knew a substantial risk of the following: (1) plaintiff would continue to have difficulty getting into the locker room, even though one coach said he would open the locker room for plaintiff; (2) plaintiff would be unable to find someone to unlock the door for her, even though she had been able to do so in the past; (3) plaintiff would choose to participate in practice without equipment; (4) the coaches would allow her to participate under those circumstances; and (5) plaintiff would be seriously injured at practice.  Plaintiff asks this court to infer that the district had such knowledge simply from the complaint that plaintiff was having difficulty getting into the locker room.  Although the rules of summary judgment require courts to draw all reasonable inferences in favor of the nonmoving party, Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 489 (7th Cir. 2007), the long and tenuous chain of inferences that plaintiff wishes to draw is not reasonable.  Davis v. Carter,

9

452 F.3d 686, 697 (7th Cir. 2006) ("[W]hen the evidence provides for only speculation or guessing, summary judgment is appropriate."). Title IX does not require school administrators to be fortune tellers.

Even if I assume that the district had notice that plaintiff might be hurt during practice, that would still not be enough. She must show that the district had notice that she would be hurt as a result of intentional sex discrimination. Smith, 128 F.3d at 1028 ("Title IX is Spending Clause legislation, and as such supports a monetary remedy only where discrimination is intentional.") Under a standard of deliberate indifference, this means that plaintiff must show that the district made a "deliberate choice to follow a [discriminatory] course of action . . . from among various alternatives." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

Plaintiff has not met this standard with respect to the failure to stop her from playing without equipment on August 30 or any of the other alleged discriminatory actions. When plaintiff's mother complained to the administrators, she gave them little reason to believe that plaintiff was the victim of intentional discrimination on the basis of sex, or at least plaintiff has adduced no evidence that she did. Three of the problems identified were the result of plaintiff's not sharing the same locker room as the boys. Plaintiff points to nothing her mother said to the administrators that would suggest that the girls' locker room was locked intentionally in order to keep plaintiff from participating because of her sex or that

10

plaintiff was deprived intentionally of pretzels or a practice schedule.  It is undisputed that the girls' locker room was locked for security reasons.  Plaintiff identifies no reason that the administrators should have believed that the problems she encountered were Title IX violations rather than oversights.   In fact, plaintiff does not propose any facts suggesting that even her mother accused anyone of intentional discrimination.  Instead, she says that the school district failed to follow its own procedures in handling complaints and failed to review defendant Grovesteen's personnel file.  Even if this is true, it does not help plaintiff prove that the district had actual knowledge of a problem regarding sex discrimination.  In any event, plaintiff points to nothing in Grovesteen's personnel file showing that he had engaged in sex discrimination in the past.

The closest plaintiff's mother came to identifying a potentially discriminatory act was the alleged comment about plaintiff needing to get her hair cut "like a boy."  However, even if I assume that defendant Grovesteen made the comment to plaintiff with discriminatory intent, this does not mean that plaintiff is entitled to damages from the district under Title IX.  That statute prohibits a school district from limiting participation or benefits in a school activity on the basis of sex.  Comments do not have that effect unless they are so severe or pervasive that they prevent the student from meaningful participation.  Cf. Davis Next Friend LaShonda D. v. Monroe County Board of Education, 526 U.S. 629, 650 (1999) (conduct is not "discrimination" under Title IX unless it "deprive[s] the victims of access to

11

the educational opportunities or benefits provided by the school"); Lucero v. Nettle Creek School Corp., 566 F.3d 720 (7th Cir. 2009) (placement of pornographic magazines in teacher's class room not sufficiently severe or pervasive to give rise to claim under Title IX).

A similar problem exists with respect to the locked door, the pretzels and the schedule.  It is difficult to characterize pretzels as a "benefit" of participating in a school program.  Not knowing the practice schedule could prevent a student from participating in the program, but plaintiff does not suggest that she ever missed a practice because she did not have the schedule or even that she did not know what the practice schedule was without looking at the posting.  It is undisputed that the practices were held at the same time each day.

The locked door to the girls' locker room would present a closer question if the district had been given notice of the problem sooner.  Under Gebser, the school district may not be held liable for any instances in which plaintiff was locked out before her mother complained, which was only a day or two before plaintiff's accident on August 30.  In fact, August 30 is the only day after the district received notice that plaintiff says she was unable to get into the locker room.  I cannot conclude that one instance rises to the level of a federal lawsuit.

In her brief, plaintiff says without citing any authority that "there is no 'de minimis' safe haven in private Title IX cases."  Plt.'s Br., dkt. #35, at 14.  Although plaintiff is correct

12

that disparate treatment claims generally do not require the plaintiff to show that the treatment was "severe or pervasive" as in cases involving harassment, e.g., Davis, 526 U.S. at 650, this does not mean that Title IX authorizes lawsuits for damages in all cases of differential treatment, no matter how isolated or minimal. The maxim that "the law doesn't concern itself with trifles" applies to civil rights cases as it does to any other case. E.g.,Williams v. City of Champaign, 524 F.3d 826, 829-30 (7th Cir. 2008) (being held in handcuffs for several minutes too long does not give rise to cause of action for damages under § 1983). See also Brandt v. Board of Education of City of Chicago, 480 F.3d 460, 465 (7th Cir. 2007) ("[T]he damages sustained by an eighth grader as a consequence of missing phys ed and labs on nine days out of an entire school year are minuscule to the point of nonexistent.").

    In discrimination cases in particular, courts have interpreted the word "discrimination" as including a materiality requirement. E.g., Washington v. Illinois Dept. of Revenue, 420 F.3d 658, 662 (7th Cir. 2005) (under Title VII, '"discrimination' entails a requirement that the employer's challenged action would have been material to a reasonable employee"). Plaintiff identifies no reason why Title IX should be read differently. Rather, case law suggests that the same principle applies to cases brought under that statute. Gabrielle M. v. Park Forest-Chicago Heights, IL. School District, 163  315 F.3d 817, 823 (7th Cir. 2003) ("[A]n action under Title IX lies only where the behavior at issue denies a

13

victim equal access to education. . . . Examples of a negative impact on access to education may include dropping grades, becoming homebound or hospitalized due to harassment, or physical violence.") (citations omitted).

The court of appeals has suggested in the context of other civil rights cases that a "campaign of petty harassment" may add up to create an injury justifying an action for damages.  E.g., Bart v. Telford, 677 F.2d 622 (7th Cir. 1982).  However, in light of the small span of time that is relevant to this claim (only a day or two), I cannot conclude that the incidents, even combined, make out a valid claim under Title IX.  Plaintiff does not identify any instances between the time her mother complained and her accident when she was denied snacks or access to the practice schedule or when anyone made additional discriminatory comments to her.  Again, one instance in which the door was locked is not sufficient.

As defendants point out, the cases in which courts have recognized private rights of action under Title IX involve outright exclusions from a program or activity, e.g., Mercer v. Duke University, 190 F.3d 643 (4th Cir. 1999), or instances of serious misconduct such as sexual abuse.  E.g., Doe v. Smith, 470 F.3d 331 (7th Cir. 2006); Delgado v. Stegall, 367 F.3d 668 (7th Cir. 2004).  Although these cases do not necessarily represent a minimum requirement, plaintiff has not cited a single case in which a court concluded that it was appropriate to hold an institution liable under Title IX in circumstances even remotely

14

similar to those in this case.  Summary judgment will be granted to the district on plaintiff's Title IX claim.

### B.  Due Process Clause: Both Defendants

Ordinarily, the due process clause does not impose on a public official a duty to protect those who are not in custody.  DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989); see also Nabozny v. Podlesny, 92 F.3d 446, 459 (7th Cir. 1996) (no duty to protect public school students).  A narrow exception exists when the public officials *created* the danger that harmed the plaintiff.  King ex rel. King v. East St. Louis School District189, 496 F.3d 812, 817-18, (7th Cir. 2007).  Courts have framed the question as whether the defendant committed an "affirmative act" that is the proximate cause of the injury.  Id.

This is a difficult standard to meet.  Defendants observe that the Court of Appeals for the Seventh Circuit has applied the exception only three times:  in White v. Rochford, 592 F.2d 381 (7th Cir. 1979), in which  police officers left children alone in a car on a cold night after arresting their father, who was driving the car; in Reed v. Gardner, 986 F.2d 1122 (7th Cit. 1993), in which police officers arrested a sober driver of a car, leaving obviously drunk passengers to drive who were later involved in a collision; and in Monfils v. Taylor, 165 F.3d 511 (7th Cir. 1998), in which an informant was murdered by a crime suspect after

15

police officers gave the suspect a recording of the victim's voice, even though the informant "begged" them not to release the recording.  (Monfils has since been called into doubt by the court in Sandage v. Board of Commissioners of Vanderburgh County, 548 F.3d 595 (7th Cir. 2008).)  Plaintiff does not point to any additional examples.  In each of these cases, the affirmative act was clear  In White and Reed it was the combination of depriving car passengers of their driver without providing a viable alternative; in Monfils it was the act of releasing the tape.

What is the affirmative act by defendant Grovesteen in this case?  Plaintiff does not suggest that he was the one who locked the door to the locker room.  In her brief, plaintiff argues that Grovesteen "refused to open the girls' locker room before practice," Plt.'s Br., dkt. #35, at 42, but the evidence she cites for this is the conversation Grovesteen had with plaintiff's mother in which he said he did not have a key to the girls' locker room.  It is undisputed that the result of that conversation was that Andrew Lehman, the junior varsity coach, agreed to be responsible for unlocking the locker room.  After that point, Grovesteen had no reason to believe that he needed to be involved.  Plaintiff does not suggest that Grovesteen refused any request to let her into the locker room on August 30.  Rather, it seems that plaintiff said nothing to Grovesteen about the problem.

Even if Grovesteen *had* refused to unlock the door, it is unlikely that his inaction would be enough to hold him liable under the due process clause.  It is not enough for a

16

plaintiff to show that her harm could have been averted if the defendant had acted. Sandage, 548 F.3d at 597 ("If all that were required was a causal relation between inaction and harm, the rule of DeShaney would be undone.")  Rather, she must show she was "safe before the state intervene[d] and unsafe afterward."  Id. at 598.  Thus, even when a plaintiff is harmed by an officer's failure to perform his job duties, courts have found no due process violation.  Town of Castle Rock v. Gonzales, 545 U.S. 748 (2005) (no liability when three daughters murdered after officers failed to enforce domestic abuse restraining order against father); Sandage, 548 F.3d 595 (no liability for murder when county failed to act on harassment complaint).  A refusal to help is simply not enough.

Alternatively, plaintiff says that defendant Grovesteen may be held liable because he "offered [plaintiff] the option to participate in rolling and blocking drills with older varsity players who were wearing protective gear."  Plt.'s Br., dkt. #35, at 42.  The key phrase in that sentence is "offered . . . the option."  Plaintiff does not suggest that defendant Grovesteen forced her to participate, only that he allowed her to do so.  That is fatal to plaintiff's due process claim.

"When the government does not monopolize the avenues of relief . . . it has no further obligation to give aid."  Archie v. City of Racine, 847 F.2d 1211, 1222 (7th Cir. 1988).  In this case, defendant Grovesteen did not "monopolize" plaintiff's "avenues of relief"; she was free to refrain from participating if that is what she wanted to do.  Plaintiff

17

points to no other cases in which a court found liability because the defendant gave the plaintiff a choice to engage in risky behavior.  In White, Reed and Monfils, the defendants took away or limited a private citizen's ability to protect himself.   It seems unlikely that these cases would have been decided the same way if the passengers in Reed or White had been give the option of a police escort to a safe place or if the victim in Monfils had been given the option of keeping the tape suppressed.

This case is similar to Edwards v. School District of Baraboo, 570 F. Supp. 2d 1077, 1084 (W.D. Wis. 2008), in which an elementary school student with a brittle bone disease argued that her teacher violated her due process rights by allowing her to play outside after a snow storm:

> Plaintiff says that the affirmative act was [the teacher's] decision to force plaintiff to go outside, but the facts do not show that [the teacher] forced plaintiff to do anything. Her alleged error was that she failed to stop plaintiff from going outside. Were plaintiff an adult, there could be no serious argument that simply allowing her to leave the building could give rise to liability under the Constitution. Because the court of appeals has declined to distinguish between adults and children in the context of the government's constitutional duty to protect, any theory of liability that relies on plaintiff's status as a child fails.

The result is the same in this case.  Defendant Grovesteen's alleged error is his failure to stop plaintiff from participating in the practice, not requiring her to do so.  Under the law of this circuit and the Supreme Court, such a failure may show poor judgment on defendant Grovesteen's part, but it does not constitute a violation of due process.  Further, because

18

plaintiff fails to show a constitutional violation by an individual, she cannot maintain her claim against the school district.  King, 496 F.3d at 819 (to hold municipality liable, plaintiff must first show violation of constitutional rights by municipal employee).  Accordingly, I must grant defendants' motion for summary judgment with respect to plaintiff's claims under the due process clause.

## C.  Equal Protection Clause: Defendant Grovesteen

The question under the equal protection clause is whether defendant Grovesteen discriminated against plaintiff because of her sex.  Plaintiff points to the same five allegedly discriminatory acts that were the basis for her Title IX claim:  (1) putting pretzels in the boys' locker room, where plaintiff was not allowed to go; (2) keeping the practice schedule in the boys' locker room; (3) telling plaintiff she needed to get her hair cut "like a boy"; (4) failing to unlock the girls' locker room, where plaintiff's protective equipment was stored; and (5) allowing plaintiff to participate in practice drills without shoulder pads.

Plaintiff adduces no evidence that defendant Grovesteen had any involvement in deciding the placement of the pretzels and the schedule, so those incidents cannot form the basis of a claim against Grovesteen.  Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir.1995) (public official may not be held liable in claim for damages under Constitution unless he was personally involved in violation).  In any event, plaintiff's complaints about the pretzels, the

schedule, the comment and the locked door face the same problem under the equal protection clause that they did under Title IX; the differential treatment is not sufficiently serious to give rise to a federal claim.

However, plaintiff's injury during practice is not "de minimis." The questions raised by that part of plaintiff's claim are whether plaintiff has adduced sufficient evidence to allow a reasonable jury to conclude that defendant Grovesteen allowed plaintiff to participate in practice without pads because of her sex and whether plaintiff can prevail on liability without a medical expert. I conclude that the answer to both of these questions is "yes."

Defendants advance virtually no argument with respect to the first question, suggesting that they concede that there is a genuine issue of material fact whether defendant Grovesteen acted with discriminatory intent. It is undisputed that, normally, when a player appeared at practice without equipment, the coaches would find equipment for the player to wear. Defendants do not explain why Grovesteen departed from that general rule in this case. Thanongsinh v. Board of Education, 462 F.3d 762 (7th Cir. 2006) (discriminatory intent may be shown by defendant's practice of providing more favorable treatment to individuals outside plaintiff's group). Further, Grovesteen's unhelpful, if not downright hostile, attitude toward's plaintiff's mother when she complained about unfair treatment supports a view that he did not want girls on the football team. Id. at 781. If defendants show at trial that Grovesteen takes the same surly approach with *everyone*, he may be able to

20

avoid liability.  <u>Wyninger v. New Venture Gear, Inc.</u>, 361 F.3d 965, 976-77 (7th Cir. 2004) (no claim for sex discrimination when defendant treated everyone poorly).  On the current record, however, a reasonable jury could find that Grovesteen discriminated against plaintiff because of her sex.

Defendants raise a defense of qualified immunity, which applies when the law did not give the defendant fair warning that his conduct was unconstitutional.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002); <u>Alexander v. City of Milwaukee</u>, 474 F.3d 437, 443 (7th Cir. 2007). Any reliance on that defense is misplaced in a case like this one in which the question is whether the defendant engaged in sex discrimination. "The fact that arbitrary gender-based discrimination, including discrimination in an educational setting, violates the equal protection clause has been plain in this circuit for" many years.  <u>Markham v. White</u>, 172 F.3d 486, 491 (7th Cir. 1999).  The issue for this claim  is not the legal question whether sex discrimination is unlawful; it is the factual question whether plaintiff can prove that defendant Grovesteen had a discriminatory motive.  If she proves at trial that he did, qualified immunity will not be available.

This leaves the question regarding expert testimony.  Defendants argue that plaintiff's claims cannot be sustained because she does not have an expert opinion that her broken clavicle was caused by not having shoulder pads.  I agree with plaintiff that defendants are mixing questions of liability with questions regarding damages.  One does not need an expert

to determine whether defendant Grovesteen discriminated against plaintiff because of her sex.  Plaintiff may need an expert at trial to prove the extent of her injuries caused by not having protective equipment, but all she needs to prove for the purpose of liability is that playing without protective equipment is unequal to playing with it.  That is an obvious conclusion confirmed by the deposition testimony of defendant Grovesteen, who admitted that safety equipment is needed to reduce the risk of injury when playing football.  Gil v. Reed, 381 F.3d 649, 662 (7th Cir. 2004) (in determining whether defendant's actions caused medical problem, expert testimony is not necessarily required; courts "need not check [their] common sense at the door").  Accordingly, defendants' motion for summary judgment will be denied with respect to plaintiff's claim that defendant Grovesteen allowed plaintiff to play without protective equipment because of her sex.

## D.  State Law: Both Defendants

Defendants raise no issues regarding the merits of plaintiff's state law claim for "recklessness."  Their sole argument is that they are immune from liability under Wis. Stat. § 893.80(4), which Wisconsin courts have interpreted to mean that public officials may not be sued for "any act that involves the exercise of discretion and judgment." Lodl v. Progressive Northern Insurance Co., 2002 WI 71, ¶ 21, 253 Wis. 2d 323, 646 N.W.2d 314 (2002).

22

Plaintiff agrees that the actions at issue in this case are "discretionary," but she says that one of the exceptions to immunity applies, which Wisconsin courts have called "duties to address a known danger." Scott v. Savers Property and Casualty Insurance Co., 2003 WI 60, ¶ 16, 262 Wis. 2d 127, 663 N.W.2d 715 (2003). I discussed the "known danger" exception in Baumgardt v. Wausau School District Board of Education, 475 F. Supp. 2d 800, 809-10 (W.D. Wis. 2007), and compared it to the "ministerial duty" exception:

> The known danger exception is fairly self-explanatory and appears to be a subset of the ministerial exception: when a public official is aware of a dangerous condition that is "clear" and "absolute," his knowledge transforms a discretionary duty into a ministerial duty. . . . One difference between the known danger exception and the more general exception for ministerial duties is that the former may apply even though the public official has some discretion in determining how to respond to the danger; a "known danger" requires a public official to "do something" to avert harm even if the necessary steps have not been spelled out in advance.

Id. at 809-10 (citations omitted). Alternatively, plaintiff argues that defendants' actions were reckless, which means that they are not entitled to protection under § 893.80(4). Noffke ex rel. Swenson v. Bakke, 2009 WI 10, ¶ 35, – Wis. 2d.– , 760 N.W.2d 156, 166 (2009) ("If he was reckless, Bakke is not entitled to immunity under the terms of" § 893.80(4).)

I see little difference between these two exceptions. Reckless conduct "occurs where a participant engages in conduct under circumstances in which (he)(she) knows or a reasonable person under the same circumstances would know that the conduct creates a high

23

risk of physical harm to another and (he)(she) proceeds in conscious disregard of or indifference to that risk." Wis JI-Civil 2020. If one disregards a "dangerous condition that is 'clear' and 'absolute,'" for the purpose of the "known danger" exception, it is likely that he has acted recklessly as well.

I agree with plaintiff that a reasonable jury could find that she has met both standards with respect to defendants' failure to insure that plaintiff participated in practice drills with proper safety equipment. (The parties assume that defendant Grovesteen and the school district may be held jointly and severally liable for this conduct, so I will do the same for the purpose of this opinion.) It would be reasonable to find that an obvious danger is presented by allowing a freshman to participate in blocking drills with juniors and seniors when they have protective equipment and she does not. Again, defendant Grovesteen admitted that safety equipment is an important part of preventing an injury during football.

It is not completely clear from plaintiff's complaint or her summary judgment materials whether she believes that defendants may be held liable for any other conduct under state law. However, the only "known danger" that plaintiff identifies is participating in practice without protective equipment. Accordingly, to the extent plaintiff intended to include other conduct in her state law claims, I conclude that defendants are immune under § 893.80(4).

E.   Involuntary Plaintiff

One issue remains that was not raised by the parties:  plaintiff has named Dean Health Plan as an "involuntary plaintiff" in her complaint.  She includes no allegations about Dean in her complaint except that it was "made a party hereto pursuant to Rule 19 of the Federal Rules of Civil Procedure."  First Am. Cpt. ¶ 303, dkt. #9.  That is incorrect.

The use of Rule 19 in a federal case to join an involuntary plaintiff is rare.  The rule states: "If the person should join as a plaintiff *but refuses to do so*, the person may be made a defendant, or *in a proper case*, an involuntary plaintiff."  Fed. R. Civ. P. 19(a) (emphasis added).  The two key phrases are highlighted.  As an initial matter, plaintiff has not suggested that Dean refused to be joined as a plaintiff, which is a requirement of the rule.  Second, plaintiff has made no showing that this is "a proper case" within the meaning of the rule.  As I have noted before, "[t]raditionally, a 'proper case' is one in which the involuntary plaintiff is outside the court's jurisdiction . . . [and] has generally been limited to cases involving patent and copyright licensees."  Impact Gel Corp. v. Rodeen, No. 05-C-223-C, 2005 WL 2122122, *3 (W.D. Wis. 2005) (citing Independent Wireless Telephone Co. v. Radio Corp. of America, 269 U.S. 459, 472 (1926); Sheldon v. West Bend Equipment Co., 718 F.2d 603, 606 (3d Cir. 1983); Eikel v. States Marine Lines, Inc., 473 F.2d 959, 962 (5th Cir.1973)).  This case does not involve a license or a party outside the court's jurisdiction.  Generally, if a party refuses to join as a plaintiff, the proper procedure is to serve

25

the complaint on that party as a defendant and then seek realignment. <u>Eikel</u>, 473 F.2d at 962; <u>Balistreri v. Richard E. Jacobs Group, Inc.</u>, 221 F.R.D. 602, 604-05 (E.D. Wis. 2004).

Even more fundamental, plaintiff does not explain in her complaint or elsewhere why she believes Dean is a necessary party.  Presumably, Dean paid for medical care that may be part of the damages in this case.  <u>Krueger v. Cartwright</u>, 996 F.2d 928, 934 (7th Cir.1993) ("insurer [that] has become partially subrogated to the rights of an insured" may be joined as party).   However, if Dean <i>is</i> a necessary party, why has it been virtually ignored since plaintiff served it with the amended complaint?  Dean has yet to make an appearance in the case and it seems that neither plaintiff nor defendants have been serving Dean with their court filings in recent months.

If Dean is to be a party in this action, the other parties are required to serve it with all court filings.  Fed. R. Civ. P. 5(a) requires that "every pleading" filed must "be served upon each of the parties."  I am aware of no exception to this rule for involuntary plaintiffs. If plaintiff has decided that Dean is not a necessary party, then it should be dismissed.  I will give plaintiff an opportunity to explain whether she believes Dean should remain a party to the case.

ORDER

IT IS ORDERED that

1.  Plaintiff Ivyanne Elborough's motion to disregard new evidence submitted with the reply brief, dkt. #59, is GRANTED.

2.  The motion for summary judgment filed by defendants Evansville Community School District and Ron Grovesteen, dkt. #28, is DENIED with respect to plaintiff's claims that defendant Grovesteen allowed plaintiff to participate in practice drills without protective equipment because of her sex and that defendants were reckless in violation of state law.  The motion is GRANTED in all other respects.

3.  Plaintiff may have until July 8, 2009, to show cause why Dean Health Plan, Inc. should not be dismissed from the case.

Entered this 23rd day of June, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

27